1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES  DISTRICT COURT

## Northern District of California

### San Francisco Division

BROADCAST MUSIC, INC., et al.,

     Plaintiffs,

  v.

COWBOY UP, INC., et al.,

     Defendants.

_____/

No. 4:14-cv-03523 JSW (LB)

**REPORT AND RECOMMENDATION
TO GRANT PLAINTIFFS' MOTION
FOR DEFAULT JUDGMENT**

[RE: ECF No. 28]

## INTRODUCTION

Plaintiffs – Broadcast Music Inc. ("BMI"), a licensor of the right to publicly perform copyrighted music compositions, and the copyright owners of the nine compositions that are the subject of this lawsuit – sued Defendant Cowboy Up, Inc. ("Cowboy Up"), doing business as Mavericks, and Defendants Jennifer Nicole Adams and Justin William McGrath individually for copyright infringement.  (Compl., ECF No. 1.)[1]  The complaint alleges that Defendants infringed nine copyrights that Plaintiffs either own or have the right to license by publicly performing the songs at Mavericks.  (*Id.*)  On November 10, 2014, the Clerk of the Court entered Defendants' defaults, and Plaintiffs now move for default judgment.  (Entry of Default, ECF No. 21; Motion for Default Judgment ("Motion"), ECF No. 28.)  The district court referred Plaintiffs' motion for default judgment to the undersigned for a report and recommendation.  (Amended Referral Order, ECF No.

---

   [1]  Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page number at the top of the document.

REPORT AND RECOMMENDATION
4:14-cv-03523 JSW (LB)

30.)  For the reasons set forth below, the undersigned recommends that the district court grant the motion for default judgment, award Plaintiffs $35,544.50 (in statutory damages, attorney's fees, and costs), and enjoin Defendants from continuing to infringe the musical compositions at issue in this lawsuit.

## STATEMENT

## I. FACTUAL ALLEGATIONS

Plaintiff BMI is a corporation that has the right to license the public performance rights of approximately 8.5 million copyrighted musical compositions, including the nine that are the subject of this lawsuit.  (Compl., ECF No. 1, ¶ 4.)  The other Plaintiffs are the copyright owners of at least one of nine musical compositions licensed to BMI and allegedly infringed by Defendants.  (*Id.* ¶¶ 5-14.)

Cowboy Up, a corporation organized and existing under the laws of the State of California, operates, maintains, and controls Mavericks, which is located at 397 Aviation Boulevard, Suite E, Santa Rosa, California 95403.  (*Id.* ¶ 15.)  Cowboy Up has a direct financial interest in Mavericks.  (*Id.* ¶ 17.)  Ms. Adams is the President, and Mr. McGrath is the Vice President, of Cowboy Up, and both of them are responsible for the operation and management of both Cowboy Up and Mavericks.  (*Id.* ¶¶ 18, 20.)  Ms. Adams and Mr. McGrath have the right and ability to supervise the activities of Cowboy Up and have a direct financial interest in Cowboy Up and Mavericks.  (*Id.* ¶¶ 19, 21.)

The nine compositions at issue were registered with the Copyright Office, which issued a registration certificate for the compositions.  (*Id.* ¶ 4.)  They are as follows:

| Song Title | Performer | Copyright Owner | Copyright Registration #s |
|---|---|---|---|
| Blue Moon a/k/a Does That Blue Moon Ever Shine On You | Toby Keith | Universal - Songs of Polygram International, Inc.; Toby Keith Covel, an individual d/b/a Tokeco Tunes; BGM Network, Inc. d/b/a Bill Green Music | PAu 2-022-343 |
| Brown Eyed Girl | Van Morrison | Universal - Songs of Polygram International, Inc. | Eu 993451 |

UNITED STATES DISTRICT COURT
For the Northern District of California

| | | | |
|---|---|---|---|
| Jessie's Girl | Richard Lewis Springthorpe a/k/a Rick Springfield | Universal - Songs of Polygram International, Inc. | PA 100-885, PA 124-280 |
| She Used To Be Mine | Ronnie Dunn | Sony/ATV Songs LLC d/b/a Sony/ATV Tree Publishing | PA 605-935 |
| We Are The Champions | Freddie Mercury | Beechwood Music Corporation | Eu 846122 Ep 377973 |
| You Can't Always Get What You Want | Mick Jagger; Keith Richard | Abkco Music, Inc. | Eu 99333 Ep 272713 |
| Ring Of Fire | June Carter; Merle Kilgore | Painted Desert Music Corporation | RE 498-587 Ep 167400 |
| World's Greatest a/k/a The World's Greatest | Robert Kelly | Universal Music-Z Tunes LLC d/b/a Universal Music Z Songs | PA 1-084-039 |
| Bad Day | Daniel Powter | Daniel Robert Powter, an individual d/b/a Song 6 Music | PA 1-164-791 |

(*See* Compl., ECF No. 1 at 6-9.)

Plaintiffs allege that at some point before April 2013, BMI learned that Mavericks was offering musical entertainment without a license from BMI or permission from the copyright owners. (Mullaney Decl., ECF No. 34, ¶ 3.) On April 24, 2013, BMI sent a letter to Ms. Adams notifying her that a license was required to authorize the performance of such works. (*Id.* ¶ 3.) BMI received no response. (*Id.*) BMI sent similar letters on at least seventeen different occasions between May 16, 2013 and May 7, 2014, but still received no response. (*Id.* ¶ 5.) On March 4, 2014, BMI sent a cease and desist notice via FedEx to Ms. Adams. (*Id.* ¶ 6.) BMI sent additional cease and desist letters on May 7, 2014 to Mr. McGrath and on May 12, 2014 to Ms. Adams. (*Id.*)

During the same period, BMI licensing personnel telephoned Mavericks on 33 occasions, and "on a number of those occasions spoke to persons associated with the establishment's operation." (*Id.* ¶ 8.) Nevertheless, the parties failed to enter into a license agreement. (*Id.* ¶ 9.)

On June 2, 2014, BMI had Victor Adams visit Mavericks to make an audio recording and written report of the music being publicly performed at the business. (*Id.* ¶ 10.) BMI analyzed Mr.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Adams's audio recording using song identification technology and identified three compositions

2  ("Brown Eyed Girl," "Jessie's Girl," and "Ring of Fire") that are alleged in the complaint to have

3  been performed. (*Id.* ¶ 11.) Then, a BMI Performance Identification employee reviewed the

4  recording and identified all nine allegedly infringed compositions. (*Id.* ¶ 12.)

5      On June 30, 2014, BMI sent a letter to Ms. Adams via FedEx and First Class mail advising her

6  of the investigation. (*Id.* ¶ 13.) BMI sent a second letter on June 30, 2014, notifying Ms. Adams

7  that the matter had been turned over to BMI's attorneys. (*Id.* ¶ 14.)

8      BMI alleges that the estimated license fees between May 2013 and April 2014 would have been

9  approximately $3,450.00, and the estimated license fees between May 2014 and April 2015 would

10  have been approximately $3,528.00. (*Id.* ¶ 17.)

11  **II. PROCEDURAL HISTORY**

12      Plaintiffs filed their complaint on August 5, 2014. (Compl., ECF No. 1.) On August 9, 2014,

13  Plaintiffs served Mr. McGrath with the summons, complaint, and related papers by substitute service

14  and mailed copies of these papers to the Defendants. (Proof of Service, ECF No. 9.) On August 11,

15  2014, Plaintiffs served Ms. Adams and Cowboy Up with the summons, complaint, and related

16  papers by process service. (*Id.*) Defendants did not answer the complaint or otherwise appear in

17  this action. (*See generally* Docket.)

18      On numerous occasions, Plaintiffs filed certificates of service showing that Defendants were

19  served with various court documents pertaining to this case, including: orders, motions, and case

20  management statements. (*See* ECF Nos. 14, 16, 20, 24, 28-5.) Plaintiffs have communicated with

21  Ms. Adams to try to negotiate a settlement, but the efforts have not been fruitful. (*See* ECF No. 18.)

22      On November 5, 2014, Plaintiffs moved for entry of default against all Defendants, and the Clerk

23  of the Court entered Defendants' defaults on November 10. (ECF Nos. 18 and 21.) On April 1,

24  2014, Plaintiffs thereafter filed and served a motion for default judgment that asks for an injunction

25  to prevent Defendants from infringing "the copyrighted musical compositions licensed by BMI,"

26  statutory damages totaling $27,000 ($3,000 for each of the nine infringement claims), and costs and

27  attorney's fees in the amount of $14,544.50. (Motion, ECF Nos. 28; Proof of Service, ECF No. 28-

28  5; Proof of Service, ECF No. 36.) The court held a hearing on the motion on April 30, 2015.

1   (4/30/2015 Minute Order, ECF No. 38.)  Counsel for Plaintiffs appeared at it, but Defendants did

2   not.  (*Id.*)

3                                        **ANALYSIS**

4   **I. JURISDICTION AND SERVICE**

5         Before entering default judgment, a court must determine whether it has subject matter

6   jurisdiction over the action and personal jurisdiction over the defendant.  *See In re Tuli,* 172 F.3d

7   707, 712 (9th Cir. 1999).  A court must also ensure the adequacy of service on the defendant.  *See*

8   *Timbuktu Educ. v. Alkaraween Islamic Bookstore*, No. C 06–03025 JSW, 2007 WL 1544790, at *2

9   (N.D. Cal. May 25, 2007).  Plaintiffs have satisfied all three requirements.

10        First, the court has subject matter jurisdiction because this action arises under the Copyright Act

11  of 1976 and federal district courts have original jurisdictions over such actions.  (*See* Compl., ECF

12  No. 1, ¶ 1; 17 U.S.C. § 101, *et seq.* (the "Copyright Act"); 28 U.S.C. § 1338(a).)  Second, the court

13  has personal jurisdiction over Defendants because Defendants were served in this district, the

14  infringement took place at Mavericks, which is located in this district, and Ms. Adams and Mr.

15  McGrath have financial stakes in Mavericks and have the right and ability to supervise its

16  employees.  (Compl., ECF No. 1 ¶¶ 20-21; *see*, *e.g., S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir.

17  2007); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986).)

18        Plaintiffs also adequately served Defendants.  Federal Rule of Civil Procedure 4(e)(1) allows for

19  service "following state law for serving a summons in an action brought in courts of general

20  jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P.

21  4(e)(1).  California law permits service

22        by leaving a copy of the summons and complaint during usual office hours in his or her
        office or, if no physical address is known, at his or her usual mailing address, other than a
23        United States Postal Service post office box, with the person who is apparently in charge
        thereof, and by thereafter mailing a copy of the summons and complaint by first- class mail,
24        postage prepaid to the person to be served at the place where a copy of the summons and
        complaint were left. When service is effected by leaving a copy of the summons and
25        complaint at a mailing address, it shall be left with a person at least 18 years of age, who
        shall be informed of the contents thereof. Service of a summons in this manner is deemed
26        complete on the 10th day after the mailing.

27  Cal. Code Civ. Proc. § 415.20(a).

28        Defendants were served by substitute service on August 11, 2014 and August 9, 2014.  (Proof of

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Service, ECF No. 9; Frank Decl., ECF No. 28-1, ¶ 3.)  As summarized above in the case's

2  procedural history, Plaintiffs served Defendants with all papers in the case along the way.  Plaintiffs

3  adequately served all Defendants.

4  **II. DEFAULT JUDGMENT**

5      Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for –

6  and the court may grant – a default judgment against a defendant who has failed to plead or

7  otherwise defend an action.  *See Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986).  After entry

8  of default, well-pleaded allegations in the complaint regarding liability and entry of default are taken

9  as true, except as to damages.  *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir.

10  2002).  The court is not required to make detailed findings of fact.  *Id.*  Default judgment cannot

11  exceed the amount demanded in the pleadings.  Fed. R. Civ. P. 54(c).

12      "A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment,"

13  *Draper*, 792 F.2d at 924-25; that decision lies within the court's discretion, *Pepsico, Inc. v. Cal. Sec.*

14  *Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).  Default judgments generally are

15  disfavored because "cases should be decided on their merits whenever reasonably possible."  *Eitel v.*

16  *McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  In deciding whether to enter a default judgment, the

17  court should consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's

18  substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action;

19  (5) the possibility of a dispute about the material facts; (6) whether the default was due to excusable

20  neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions

21  on the merits.  *Eitel*, 782 F.2d at 1471-72.

22      **A. Possibility of Prejudice to the Plaintiff (The First *Eitel* Factor)**

23      Plaintiffs will be prejudiced if default judgment is not entered.  Because Defendants have

24  declined to take part in the litigation, Plaintiffs will not be able to stop Defendants from continuing

25  to infringe Plaintiffs' copyrighted works.  *See PepsiCo*, 238 F. Supp. 2d at 1177.

26      **B. The Merits and Sufficiency of the Complaint (The Second and Third *Eitel* Factors)**

27      The merits of Plaintiffs' claims and the sufficiency of the complaint favor entry of default

28  judgment.  To establish a claim for copyright infringement, a plaintiff (1) "must show ownership of

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1    the allegedly infringed material," and (2) "must demonstrate that the alleged infringer[] violate[d] at

2    least one exclusive right granted to copyright holders under 17 U.S.C. § 106."  *A&M Records, Inc. v.*

3    *Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).  Plaintiffs allege that each of the nine

4    compositions at issue in this case is the subject of a valid copyright and that the copyright owners

5    "complied in all respects with the requirements of the Copyright Act and received from the Register

6    of Copyrights Certificates of Registration bearing the number(s) listed" in the complaint.  (Compl.,

7    ECF No. 1); *see also Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 488-89 (9th Cir. 2000)

8    ("Registration is prima facie evidence of the validity of a copyright.").  Moreover, for each work,

9    Defendants allegedly performed and/or caused the musical composition to be performed publicly

10   without a license or permission to do so.  (Compl., ECF No. 1, ¶ 28); *see* 17 U.S.C. § 501(a)

11   (infringement occurs when alleged infringer engages in activity listed in § 106); 17 U.S.C. § 106(4)

12   (affording copyright owners of musical works the exclusive rights to perform the copyrighted work

13   publicly or to authorize another to do so).  Because the Clerk of the Court has entered default, all

14   well-pleaded allegations in Plaintiffs' complaint regarding liability should be taken as true, except as

15   to the amount of damages.  *See Fair Hous. of Marin*, 285 F.3d at 906; *TeleVideo Sys., Inc.*, 826 F.2d

16   at 917-18.  Accordingly, Plaintiffs have adequately alleged valid claims for copyright infringement,

17   and the second and third *Eitel* factors favor entry of default judgment.

18      **C.  The Sum of Money at Stake (The Fourth *Eitel* Factor)**

19         When the money at stake in the litigation is substantial or unreasonable, default judgment is

20   discouraged.  *See Eitel*, 782 F.2d at 1472 (three-million dollar judgment, considered in light of

21   parties' dispute as to material facts, supported decision not to enter default judgment); *Tragni v.*

22   *Southern Elec. Inc.*, No. 09-32 JF, 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Board of*

23   *Trustees v. RBS Washington Blvd, LLC*, No. C 09-00660 WHA, 2010 WL 145097, *3 (N.D. Cal.

24   Jan. 8, 2010) (citing *Eitel*, 782 F.2d at 1472).  When the sum of money at stake is tailored to the

25   specific misconduct of the defendant, default judgment may be appropriate.  *See Board of Trustees*

26   *of the Sheet Metal Workers Health Care Plan v. Superhall Mechanical, Inc.*, No. C–10–2212 EMC,

27   2011 WL 2600898, at *3 (N.D. Cal. June 30, 2011) (the sum of money for unpaid contributions,

28   liquidated damages, and attorneys fees was appropriate as they were supported by adequate evidence

1    provided by plaintiffs).

2        Here, Plaintiffs' requested relief is not so large or burdensome to necessitate denying the motion

3    solely on this basis.  The Copyright Act authorizes statutory damages of $750 to $30,000 per

4    infringed work.  17 U.S.C. § 504(c)(1).  Plaintiffs seek statutory damages of $3,000 per copyrighted

5    recording ($27,000 total) and $14,544.50 in court costs and attorney's fees.  (Motion, ECF No. 28 at

6    2.)  These amounts are not so large in light of the evidence provided by Plaintiffs.  Accordingly, this

7    factor also supports default judgment.

8        **D.  Possibility of a Factual Dispute or Excusable Neglect (The Fifth and Sixth *Eitel* Factors)**

9        Because Defendants have not presented a defense or otherwise communicated with the court,

10   there is no indication that her default is due to excusable neglect or that the material facts are subject

11   to dispute.  *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071-72 (D.

12   Ariz. 2006).  Further, BMI's many letters and calls to Defendants prior to and during this action

13   reduce the likelihood of excusable neglect.

14       **E.  Policy Favoring Merits Decisions (The Seventh *Eitel* Factor).**

15       Finally, although strong public policy favors decisions on the merits, *see Pena v. Seguros La*

16   *Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985), it does not appear that litigation of the merits

17   will be possible due to Defendants' refusal to litigate.

18       In sum, the court finds that all of the *Eitel* factors weigh in favor of granting the default

19   judgment.  The court recommends the district court grant Plaintiffs' motion for entry of default

20   judgment.

21   **III.  THE RELIEF SOUGHT**

22       Plaintiffs request a judgment awarding them statutory damages, injunctive relief, costs, and

23   attorney's fees.  (*See* Motion, ECF No. 28.)  The court addresses each in turn.

24       **A.  Statutory Damages Under 17 U.S.C. § 504(c)**

25       Plaintiffs seek statutory damages under the Copyright Act, which provides for statutory damages

26   in lieu of actual damages at the plaintiff's option.  *See* 17 U.S.C. § 504(c).  The standard spectrum of

27   statutory damages ranges from $750 to $30,000 "for all infringements involved in the action, with

28   respect to any one work, . . . as the court deems just."  *Id.*  Within those limits, a district court "has

REPORT AND RECOMMENDATION
4:14-cv-03523 JSW (LB)

UNITED STATES DISTRICT COURT
For the Northern District of California

wide discretion in determining the amount of statutory damages to be awarded." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990). The court's assessment should be guided by "the nature of the copyright [and] the circumstances of the infringement." *Id.* (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952)).

Here, Plaintiffs seek statutory damages of $3,000 per infringed work for a total of $27,000. According to Plaintiffs' evidence, this is slightly less than four times what it would have cost Defendants to purchase a BMI license agreement covering the period between May 2013 and April 2015. (*See* Mullaney Decl., ECF No. 28-3, ¶ 17 (estimating the license fee for this period is approximately $6,978.00).)

In *Broadcast Music, Inc. v. Kiflit*, the court noted that "the four-fold multiple of license fees is at the upper range of many statutory damages awards throughout the county." No. 12-CV-00856-LHK, 2012 WL 4717852, at *4 (N.D. Cal. Oct. 2, 2012) (collecting cases and reducing statutory damages award to three time the cost of a BMI blanket license agreement). "Courts typically award three times the amount of a properly purchased license for each infringement." *Broad. Music, Inc. v. JMN Rest. Mgmt. Corp.*, No. 14-CV-01190-JD, 2014 WL 5106421, at *3 (N.D. Cal. Oct. 10, 2014) (citing *Sailor Music v. IML Corp.*, 867 F. Supp. 565, 570 (E.D.Mich. 1994)); *Broadcast Music, Inc. v. Paden*, No. 5:11-02199-EJD, 2011 WL 6217414, at *5 (N.D. Cal. Dec. 14, 2011) (finding that courts have consistently held that a statutory damages award that is three times the amount that the plaintiff would have received in licensing fees is appropriate).

In this case the undersigned recommends lowering the statutory damages award to $21,000, or $2,333.33 for each of the nine infringements, which is slightly more than three times the estimated licensing fees of $6,978.00. The court finds this award to be reasonable because it best conforms with the standard applied by other courts.

**B. Injunctive Relief Under 17 U.S.C. § 502(a)**

***1. Injunctive Relief is Appropriate***

Plaintiffs ask the court to issue a permanent injunction barring "Defendants, their agents, servants, employees, and all persons acting under her permission and authority . . . from infringing, in any manner the copyrighted musical compositions licensed by BMI, pursuant to 17 U.S.C. [§]

502."  (Complaint, ECF No. 1 at 5; *see* Motion, ECF No. 28 at 2.)

The Copyright Act, 17 U.S.C. § 502(a), allows a court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations."  *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993).

On this record, the court finds that injunctive relief is appropriate.  As discussed, Plaintiffs have established that Defendants are liable for copyright infringement.  On the record presented, there is also a threat of continuing violations.  First, it would be relatively easy for Defendants to continue to infringe Plaintiffs' compositions by playing them at Mavericks.  Defendants infringed Plaintiffs' copyrights more than a year after BMI began sending them cease and desist letters.  (*See* Mullaney Decl., ECF No. 28-3.)  Second, despite BMI's ongoing attempts to engage with them, Defendants failed to appear in this action.

### 2. The Scope of the Injunction

The scope of an injunction "must be tailored to remedy the specific harm alleged.  An overbroad injunction is an abuse of discretion."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (quoting *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991)) (internal citation omitted).  In the copyright context, "the scope of the injunction should be coterminous with the infringement."  4 Nimmer & Nimmer, *Nimmer on Copyright*, § 14.06[C].

In addition, Federal Rule of Civil Procedure 65 requires "[e]very order granting an injunction" to "state its terms specifically" and to "describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1)(B)-(C).  "'[O]ne basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits.'"  *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1047-48 (9th Cir. 2013) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1086–87 (9th Cir. 2004)).  "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."  *Id.*  Generally speaking,

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    "an ordinary person reading the court's order should be able to ascertain from the document itself

2    exactly what conduct is proscribed."  *Id.* (citing 11A Charles A. Wright *et al.*, *Federal Practice &*

3    *Procedure* § 2955 (2d ed.)).

4       Plaintiffs ask the court to bar Defendants from infringing "the copyrighted musical compositions

5    licensed by BMI."  (Compl., ECF No. 1 at 5.)  An issue here is that Plaintiffs have established

6    Defendants' liability for infringing only nine of the 7.5 million works in BMI's nonexclusive

7    licensing portfolio, and only the copyright owners for those nine works are Plaintiffs in the case.

8    The broad language in the proposed injunction covers works that Defendants have not infringed and

9    that the copyright owners do not own.[2]  The proposed injunction also does not list the 7.5 million

10   works BMI licenses, which – even without the interplay with Plaintiffs' ownership – is a notice

11   issue.  A narrower injunction that still accomplishes BMI's purpose is to enjoin only the copyrighted

12   musical compositions listed on the chart on pages 2 and 3 of this report and recommendation.  That

13   is the recommendation here.  This accomplishes what BMI wants: a money judgment as a

14   consequence for infringement, an injunction against future infringement of the BMI-licensed works

15   that are listed in the chart, and notice of the consequences of future infringement of BMI-licensed

16   copyrighted works.

17   **C.  Costs and Attorney's Fees Under 17 U.S.C. § 505**

18       Under Section 505 of the Copyright Act, courts have discretion to award reasonable attorney's

19   fees and costs to the prevailing party in a copyright action.  17 U.S.C. § 505.  The Ninth Circuit

20   employs the lodestar approach to determine whether a fee request is reasonable.  *Jordan v.*

21   *Multnomath County*, 815 F.2d 1258, 1262-63 (9th Cir. 1987).  "The 'lodestar' is calculated by

22

23        [2] BMI's licensing agreement with the copyright owners is explained in Mullaney Decl., ECF
24   No. 28-3.  The copyright owners (called affiliates in the licensing agreements) retain their right to
separately grant permission to a particular user for public performance of their copyrighted songs.
25   At the pleadings stage, with the joinder of the copyright owners for the nine works at issue, without
any argument to the contrary by the defaulting defendants, and only on this record, the undersigned
26   concludes that the complaint's allegation of licensing and ownership are sufficient to survive the
"plausibility" standard and allow the relief that the copyright owner Plaintiffs request collectively
27   with BMI for the nine works at issue in the lawsuit.  That being said, the record does not support a
28   broad injunction for the entire BMI catalogue given the interplay between non-exclusive licensing
and ownership and instead supports the more tailored injunction that the court recommends granting.

multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The lodestar is deemed to be presumptively reasonable, though the district court has the discretion to consider an upward or downward adjustment.  *Camacho,* 523 F.3d at 978.

Here, Plaintiffs seek an award of $13,647.50 in attorney's fees and $897.00 in costs.  (Frank Decl., ECF No. 28-1, ¶ 13.)  According to attorney Karen Frank, she billed $9,200.00 (16 hours at $575 per hour).  Ms. Frank states that she has represented BMI "in similar matters for over 20 years" and is "extremely familiar and efficient with the issues presented in this matter."  (*Id.* ¶ 16.)  Ms. Frank also states that her associate Jeremiah Burke billed $2,697.00 (8.3 hours at $325 per hour), and her associate Bejan Fanibanda billed $1,750.00 (5 hours at $350 per hour).  (*Id.* ¶ 13.)  Ms. Frank's declaration provides adequate justification for the rates charged by both Mr. Burke and Mr. Fanibanda.  (*Id.* ¶¶ 17-18.)  Ms. Frank's declaration describes the tasks the attorneys completed and the amount of time spent on each task in one-tenth hour increments.  (*Id.* ¶ 14.)  The specified tasks are appropriate for this type of litigation and the hours billed appear reasonable.  Accordingly, the undersigned recommends the fee request of $13,647.50.

The costs are $400.00 in filing fees and $497.00 in process server fees for a total of  $897.00.  (*Id.* ¶ 15.)  These are reasonable, and the court recommends awarding them.

**D.  Interest Under 28 U.S.C. § 1961**

Plaintiffs ask for interest on the judgment under 28 U.S.C. § 1961, which provides that interest is allowed on "any money judgment recovered in a district court."  The undersigned recommends it.  *See Broadcast Music Inc.*, 2012 WL 4717852 at *5 (awarding it in like circumstances).

**CONCLUSION**

For the above reasons, the court recommends that the district court grant Plaintiffs' motion for default judgment and award them a total monetary award of $35,544.50 as follows: $21,000.00 in statutory damages, $13,647.50 in attorney's fees, $897.00 in costs, and interest on the judgment.  The court also recommends that the district court enjoin Defendants from infringing the nine BMI-licensed copyrighted musical compositions listed on the chart on pages 2 and 3 of this report and

UNITED STATES DISTRICT COURT
For the Northern District of California

1    recommendation.

2         Plaintiffs must serve Defendants with a copy of this report and recommendation.  Any party may

3    file objections to this Report and Recommendation with the district judge within fourteen days after

4    being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D. Cal. Civ. L.R. 72.

5    Failure to file an objection may waive the right to review of the issue in the district court.  This

6    disposes of ECF No. 28.

7         **IT IS SO ORDERED AND RECOMMENDED.**

8    Dated: April 30, 2015

9                                                        _____
                                                         LAUREL BEELER
10                                                       United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
4:14-cv-03523 JSW (LB)                          13